

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the order of the Court.**

Signed June 19, 2006                      United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| EDWARD D. RONK AND § | |
| JUDY D. RONK § | |
|     Debtors. § | CASE NO. 05-42552-DML-7 |
| § | |

### MEMORANDUM OPINION

Before the court are (1) the objection (the "Objection") of Henson Lumber, Ltd. ("Henson") to the exemption by Debtors of certain real property located at 5700 Matlock Road,[1] Acton, Texas (the "Property"); and (2) Debtors' motions (the "Motions") pursuant to section 522(f) of the Bankruptcy Code (the "Code")[2] seeking avoidance of liens asserted against the Property by Henson, Alex Fernandez ("Fernandez") and Herman Pruitt, Inc. ("Pruitt" and, together with Fernandez and Henson, the "Lienors"). The court conducted an initial hearing on the Motions on May 15, 2006, at which Henson and Fernandez appeared. Following that

---

[1]      Evidence presented at the June 8 hearing suggests this address does not correctly identify the Property. Because of the court's ruling, there is no need to address the significance of this evidence.

[2]      11 U.S.C. §§ 101, *et seq*. The Code is here applied as effective for cases filed prior to October 17, 2005, the date on which most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective.

hearing, at the request of the court, Debtors and Lienors filed additional briefs respecting the proper reading and application of FED. R. BANKR. P. 4003(b) to the matters before the court. The court then conducted a second hearing on June 8, 2006, at which Henson and Pruitt appeared, as did Debtor.

Debtor Edward Ronk ("Ronk") testified at both the May 15 and June 8 hearings. Edwin Seilheimer, counsel to Pruitt, testified (without objection) at the June 8 hearing. The court received argument at both hearings.

This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(2)(A), (K) and (O). This memorandum opinion comprises the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052 and 9014.

## I. Background

Prior to this chapter 7 case, Ronk was in the construction business.[3] In the course of his business, Debtors, *inter alia*, incurred obligations to Lienors that were ultimately reduced to judgments. Lienors abstracted their judgments against Debtors and, as a result, now assert liens against Debtors' real property.

Debtors commenced this case under chapter 13 of the Code on March 11, 2005. At that time, Debtors listed 7202 Westover, Granbury, Texas (the "Granbury House"), as their residence. Initially, in a Schedule C[4] filed on March 30, 2005, Debtors claimed the Granbury

---

[3] In a June 1, 2005, affidavit, Edward D. Ronk stated that he was in the construction industry. Also, both his Schedule I dated March 28, 2005, and Second Amended Schedule I dated October 7, 2005, show under the employment section that his occupation is construction.

[4] Code § 521 and FED. R. BANKR. P. 1007(b) require a debtor to file schedules of assets and liabilities. A debtor may designate on Schedule C any property claimed as exempt under applicable law.

House as their homestead, exempt under Texas law. Debtors, who converted their case to chapter 7 on November 23, 2005, amended their schedules without changing their homestead exemption before their chapter 7 meeting of creditors pursuant to Code § 341 on March 1, 2006. At that meeting, however, Ronk stated that Debtors intended to claim the Property as their homestead. On April 4, 2006, Debtors amended their Schedule C to so reflect, and, on April 24, Debtors filed the Motions. In the meantime, on April 13, 2006, Debtors again amended their Schedule C, but without any change to their claim of the Property as exempt. On May 11, 2006, Henson filed the Objection, asserting that the Property does not qualify as an exempt homestead under Texas law.

## II. Issues

Although the parties have addressed a number of other questions in their briefs and argument, the court need only decide two:

1. Was the Objection filed timely; and
2. If the Objection was filed timely, does the Property qualify as an exempt homestead under Texas law?

## III. Discussion

A. The Objection Was Filed Timely

Whether or not the Objection was timely filed turns on the construction of Rule 4003(b). Rule 4003(b)[5] states:

---

[5] The Advisory Committee on Bankruptcy Rules has prepared and recommended for adoption by local courts Interim Bankruptcy Rules designed to implement changes made by BAPCPA. The Interim Rules have been adopted by the Northern District of Texas and are effective in cases commenced on or after October 17, 2005. As Debtors filed their petition prior to October 17, 2005, Interim Rule 4003(b) is not applicable to this case; however, even if it were, this would not affect the court's decision with respect to the matter now before it.

**(b) Objections to claim of exemptions.**

A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension. Copies of the objections shall be delivered or mailed to the trustee, the person filing the list, and the attorney for that person.

Debtors assert that the 30-day time frame specified in Rule 4003(b) runs from March 1, 2006, when Ronk announced Debtors' intent to exempt the Property, or, at the latest, from April 4, 2006, when Debtors filed their amended Schedule C claiming the Property as exempt. Because the Objection was filed on May 11, 2006, under either of these interpretations the Objection was late. Because the Supreme Court ruled in *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992) that the exemption of property cannot be challenged out of time, Debtors reason, the Property is, in fact, exempt.

Debtors' reading of Rule 4003(b) requires that the 30-day period for objecting to the exemption of the Property run from Debtors' section 341 meeting in their chapter 7 case (and the oral claim of exemption) or the April 4, 2006, filing of the first Schedule C listing the Property as exempt. But Rule 4003(b) provides that the 30 days of Rule 4003(b) runs from the conclusion of the section 341 meeting *or* the filing of "any amendment to [Schedule C] . . . whichever is later" (emphasis added). Because Debtors again amended their Schedule C on April 13, 2006 (though not with respect to the Property), if the 30 days runs from that date, the Objection was filed timely.

Debtors rely on *In re Cooke*, 84 B.R. 67 (Bankr. N.D. Tex. 1988) (Felsenthal, J.) for their argument that the oral claim of exemption of the Property triggered the 30 days specified in Rule

4003(b). *Cooke*, however, was not a converted case (with, as in the case at bar, two section 341 meetings); nor, from the face of the opinion, does it appear there was the same flurry of Schedule C (or its equivalent) amendments. The question before the court in *Cooke* was whether the party objecting to the exemption had notice (it was uncontested that the amended list of exemptions was not served on the objecting party). *Cooke* was also decided before Rule 4003(b) reached its present form. Finally, with the greatest respect to Judge Felsenthal, *Cooke* is not binding on this court. *See In re Gaylor*, 123 B.R. 236, 241-43 (E.D. Mich. 1991) (asserting that a bankruptcy court is not even bound by the decisions of a district court within the same district and stating that in order for a decision to be binding, it must have been issued by a superior court); *see also Telesphere Liquidating Trust v. Galesi*, 246 B.R. 315, 324 (N.D. Ill. 2000) (a district court decision is not binding precedent on another district judge within the same district). Thus, while the court might even decide *Cooke* as did Judge Felsenthal, if faced with the facts and equities existing and the law applicable in that case, it rejects *Cooke's* reasoning as dispositive here.

In support of their argument that the April 13, 2006, amendment to Schedule C did not establish a new date from which the 30 days specified by Rule 4003(b) would run as to objections to exemption of the Property, Debtors cite several cases. In *In re Kazi*, 985 F.2d 318 (7th Cir. 1993), the court affirmed a determination by the bankruptcy court that amendment of a list of exemptions does not extend or reopen the time for objecting to exemptions claimed earlier and not affected by the amendment. *Id.* at 323. The reasoning of the Court of Appeals in support of this holding is, however, sparse.[6] The Court limited itself to the observation that "[i]t

---

[6] The Court relied generally on *In re Payton*, 73 B.R. 31, 33 (Bankr. W.D. Tex. 1987) and *Matter of Gullickson*, 39 B.R. 922, 923 (Bankr. W.D. Wis. 1984). In these cases, the reasoning of the courts is limited to the statement that "[t]he rules must be construed reasonably." *See Payton*, 73 B.R. at 33; *see*

makes no sense to interpret Rule 4003(b) in [such a] manner . . . . [S]uch a holding would controvert the principles of finality expressed in *Taylor* . . . ." *Id.*

Debtors next point to *In re Hickman*, 157 B.R. 336 (Bankr. N.D. Ohio, 1993). The *Hickman* court also concluded that the filing of an amended list of exemptions did not open the door to objections to exemptions previously claimed. The reasoning in *Hickman*, though, is even less developed than that in *Kazi*, being limited to the statement, "This Court does not believe that an amendment is meant to open up all the other claims [of exemption] to objection." 157 B.R. at 339.

Finally, Debtors cite to *Hall v. Finance One of Georgia, Inc.,* 752 F.2d 582 (11th Cir. 1985) to support the proposition that the Property, having been claimed as exempt more than 30 days before any objection was filed, ceased to be property of the estate and so is subject to the free use of Debtors. *See Hall*, 752 F.2d 584.

Turning first to *Hall*, that exempt property ceases to be property of the estate does not mean the court loses jurisdiction to deal with it. For example, besides Code § 522(f), the court can protect a debtor's exempted property pursuant to Code § 362 even after the property ceases to be property of the estate. *See* section 362(c)(2)(C). Moreover, debtors may change their minds and adopt one piece of property as exempt in lieu of another. *See, e.g., Lowe v. Sandoval (In re Sandoval)*, 103 F.3d 20 (5th Cir. 1997) (debtors switched homestead exemption from one house to another); *see also In re Peterson*, 929 F.2d 385, 387 (8th Cir. 1991) ("A debtor may amend the list of property claimed as exempt…'as a matter of course at any time before the case is closed…'" (quoting FED. R. BANKR. P. 1009(a))); *Lucius v. McLemore*, 741 F.2d 125, 127

*also Gullickson*, 39 B.R. at 923.

(6th Cir. 1984) (per curiam) (same). Indeed, that is precisely what happened in the instant matter: Debtors claimed the Granbury House as exempt; after 30 days from May 3, 2005, the date of Debtors' section 341 meeting in their chapter 13 case (the relevant section 341 meeting for purposes of Rule 4003(b); *see* Code § 348; *cf.* FED. R. BANKR. P. 1019(2)), that property was exempted and, by Debtors' theory, passed beyond the reach of their trustee.[7] To hold that exemption of property so separates it from the estate as to place it beyond the trustee's reach, even if the debtor, changing his or her mind, decides to amend and substitute a different piece of exempt property, is not sensible. If a debtor is to have the right to so amend, it necessarily follows that property previously exempted may be returned to the estate once its exemption is forsaken.

As to *Kazi* and *Hickman*, those cases (neither of which is binding precedent for this court) ignore the plain meaning of Rule 4003(b). This court is obliged to apply the clear, unambiguous language of the Federal Rules of Bankruptcy Procedure. *See Klesalek v. Klesalek (In re Klesalek)*, 307 B.R. 648, 652 (B.A.P. 8th Cir. 2004) ("It is a settled principle that unless there is some ambiguity in the language of a Bankruptcy Rule, a court's analysis must end with the Rule's plain meaning."); *cf. Zer-Ilan v. Frankford (In re CPDC Inc.),* 221 F.3d 693, 699 (5th Cir. 2000) (criticizing district court's ruling as inconsistent with the plain language of FED. R. BANKR. P. 8001(a)); *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) (applying plain meaning rule to FED. R. BANKR. P. 4003(b)). The plain meaning rule is dispositive in construction unless an absurd result would be produced by its application. *See Lamie v. United*

---

[7] Debtors' section 341 meeting on May 3, 2005, in their chapter 13 case, under their theory, triggered the inexorable exemption—and loss to the estate—of the Granbury House as of June 2, 2005, 30 days later.

*States Trustee*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (quoting *Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6 (2000) (in turn quoting *United States* v. *Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)))).

Rule 4003(b) is clear and unambiguous. The 30 days for objecting to exemptions runs from the later of the conclusion of the section 341 meeting or any amendment to the list of claimed exemptions.[8] The drafters of the Rule could easily have provided that post-amendment objections were limited only to changes made to a debtor's exemptions by that amendment. They did not.

As to the *Kazi* Court's reasoning that it would make no sense to read Rule 4003(b) as reopening exemption issues upon the filing of any amendment to the list of exemptions, this court cannot agree. Exemption schemes tend to be interdependent. Under Texas law, a family may exempt up to $60,000 worth of personal property falling into various categories. *See* Tex. Prop. Code Ann. §§ 42.001(a)(1), 42.002(a)(1)-(11) (Vernon 2005). An initial claim of exemption may thus become invalid through accrual of total value of exemptions claimed through amendment. Objection to exceeding the $60,000 maximum ought not to be limited to

---

[8] Notably the language "whichever is later" was added by the 2000 amendments to the Rule. This was after both *Kazi* and *Hickman* were decided. Although the 2000 Advisory Committee Note to Rule 4003 does not give any reason for adding these words, they unquestionably shore up the conclusion that the 30 days for objection runs for all purposes from the date of *any* amendments. Prior to the 2000 amendment, the use of the language "any amendment" could be read to suggest the triggering of a distinct 30-day period for each amendment. The words added in 2000 make it clear that "any amendment" is best read as "one or another [amdendment] without restriction or exception." THE AMERICAN HERITAGE DICTIONARY, p. 117 (1985).

the last accrued exemption as opposed to the total of exemptions. Under the federal scheme (Code §522(d)), what are "household goods" or what is property held for "household use" (Code §522(d)(3)) may vary depending on what property a debtor claims exempt as "a residence" pursuant to Code §522(d)(1). Thus it makes perfect sense to allow a trustee and other parties in interest to reassess a debtor's use of an exemption scheme upon the filing of any amendment that will change that use. It is no burden on the debtor seeking finality to require that he or she get it right the first time.[9]

The court considers the addition of the words "whichever is later" to Rule 4003(b) significant. Absent that language, the argument that objections following an amendment must be limited to changes effected by the amendment made better sense. It is difficult for the court to see how the rule can now be read to set various 30-day objection periods for claims made originally or by amendment.

B.   The Property Is Not Exempt

Having concluded the Objection was timely, the court must next decide if the Objection should be sustained. Debtors have elected to exempt property under the laws of Texas. *See* Code §522(b). Under Texas law, Debtors are entitled to exempt a homestead.[10]

---

[9] The court respectfully disagrees with the *Kazi* Court's conclusion that restarting the 30-day objection period of Rule 4003(b) upon any amendment to the list of objections, would run contrary to *Taylor's* goal of finality. Justice Thomas, in *Taylor*, stated, "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." 503 U.S. at 644. This does not mean that where a debtor of his or her own volition restarts a process, he or she may claim that finality protects a prior, but now reopened, instance of overreaching.

[10] Tex. Prop. Code Ann. § 41.001(a) (Vernon 2005) provides:

(a) A homestead and one or more lots used for a place of burial of the dead are exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property.

While homesteads are favorites of the law (*see Perry v. Dearing (In re Perry),* 345 F.3d 303, 316 (5th Cir. 2003); *Bradley v. Pac. Southwest Bank, FSB (In re Bradley),* 960 F.2d 502, 507 (5th Cir. 1992)), not just any piece of real property may be claimed as a homestead. Under Texas law, one claiming property as his homestead has the burden to show overt acts of homestead usage consistent with his intent to use the property as his homestead. *See Cheswick v. Freeman*, 287 S.W.2d 171, 173 (Tex. 1956); *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). An intention to establish a homestead on designated property unaccompanied by acts evidencing the intent is insufficient to establish that property as a homestead. *See Davis v. McClurkan*, 378 S.W.2d 358, 360 (Tex. Civ. App.—Eastland 1964, no writ); *see also Parsons v. McKinney*, 63 Tex. Civ. App. 617, 619, 133 S.W. 1084 (1911) ("If he has never lived on the property, his mere secret intention to, at some indefinite time in the future, occupy it as a home, would not invest it with a homestead character.").

In the case at bar, Debtors do not reside (and have never resided) on the Property. Indeed, the evidence suggests the Property is virtually uninhabitable. The only improvements to the Property are a shed and two graded pads. The only basis for considering the Property to be Debtors' homestead is their belated designation of it as such in this bankruptcy case. Such facts do not a homestead make. Because the Property does not meet the tests for a homestead, it cannot be claimed as exempt.

### IV. Conclusion

For the foregoing reasons, the Objection is sustained. Accordingly, the Motions are moot and will be denied.

It is so ORDERED.

# # # END OF MEMORANDUM OPINION # # #